IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TYSON A. L. QUISANO, | ) | CIVIL NO.  07-00594 JMS/BMK |
| | ) | |
| Petitioner, | ) | ORDER DENYING QUISANO'S |
| | ) | PETITION FOR WRIT OF ERROR |
| vs. | ) | CORAM NOBIS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## ORDER DENYING QUISANO'S PETITION FOR WRIT OF ERROR CORAM NOBIS

## I.  INTRODUCTION

Currently before the court is Petitioner Tyson A. L. Quisano's ("Petitioner" or "Quisano") Petition for Writ of Error Coram Nobis to modify a $15,000 fine imposed in a March 14, 2006 judgment.  Pursuant to Local Rule 7.2(d), the court can determine Quisano's Petition without oral argument.  For the following reasons, the court DENIES Quisano's Petition.

## II.  BACKGROUND

On December 1, 2005, Quisano and his co-defendant, Dustin Ige, were charged in a 10-count Indictment with conspiracy to distribute methamphetamine, its salts, isomers, and salts of its isomers ("methamphetamine"), and distribution of methamphetamine, in violation of 21

U.S.C. § 841.[1]  Gov. Ex. A.

On April 12, 2005, Quisano and the government entered into a plea

agreement in which Quisano agreed to plead guilty to Count 1, conspiracy to

distribute 50 or more grams of methamphetamine, and Count 10, distribution of 50

or more grams of methamphetamine.  Gov. Ex. B, ¶ 4.  In exchange for his guilty

plea, the government agreed to dismiss the remaining counts of the Indictment as

to Quisano.  *Id.*  In the agreement, Quisano expressly waived his right to appeal

his sentence except under limited circumstances:

> The Defendant is aware that he has the right to appeal the
> sentence imposed under Title 18, United States Code, Section
> 3742(a).  Defendant knowingly waives the right to appeal,
> except as indicated in subparagraph "b" below, any sentence
> within the maximum provided in the statute(s) of conviction or
> the manner in which that sentence was determined on any of
> the grounds set forth in [18 U.S.C. § 3742], or on any ground
> whatever, in exchange for the concessions made by the
> prosecution in this plea agreement.
>> a.      The Defendant also waives his right to challenge
>> his sentence or the manner in which it was determined in
>> any collateral attack, including, but not limited to, a
>> motion brought under [28 U.S.C. § 2255], except that
>> defendant may make such challenge (1) as indicated in
>> subparagraph "b" below, or (2) based on a claim of
>> ineffective assistance of counsel.
>> b.      If the Court imposes a sentence greater than
>> specified in the guideline range determined by the Court
>> to be applicable to the Defendant, the Defendant retains

---

[1] Counts 1 and 3-10 of the Indictment involved charges against Quisano.

the right to appeal the portion of his sentence greater
than specified in that guideline range and the manner in
which that portion was determined under Section 3742
and to challenge that portion of his sentence in a
collateral attack.

c.      The prosecution retains its right to appeal the
sentence and the manner in which it was determined on
any of the grounds stated in Title 18, United States Code,
Section 3742(b).

*Id.* ¶ 13.

On April 12, 2005, Quisano entered his guilty plea before the court.

During the plea colloquy, Quisano acknowledged that he understood and had

spoken with his attorney about the plea agreement.  Gov. Ex. D, 5.  Quisano also

acknowledged that he understood that the plea agreement limited his right to

challenge a sentence in a collateral attack except under two circumstances -- if the

court imposed a sentence greater than the sentencing guidelines, or if his attorney

provided ineffective assistance of counsel.  *Id.* at 13-14.  After determining that

Quisano's plea was knowing and voluntary, the court accepted Quisano's plea.  *Id.*

at 22.

On June 27, 2005, the Probation Office prepared a Presentence

Investigation Report ("PSR"), which included a section titled "Financial

Condition: Ability to Pay."  The PSR determined Quisano's ability to pay a fine

"based on documentation submitted by the defendant and a review of computer

credit bureau records."  PSR ¶ 72.  The PSR listed the following assets: (1) $2,100

from checking and savings accounts; (2) $86,000 in unsecured assets including

$35,000 from motor vehicles, $50,000 from his business, and $1,000 from jewelry;

and (3) $32,000 in secured assets from another motor vehicle.  *Id.*  The PSR did

not explain how Quisano's business worth was determined, but did state that the

value of the vehicles was based on their fair market value.  The PSR determined

that Quisano's net worth was $92,100 by subtracting $28,000 for a car loan from

the total assets of $120,100.  The PSR concluded that "[b]ased on the defendant's

financial profile and earning capability, it appears that he is able to pay a fine."  *Id.*

 The PSR was provided to Quisano, who did not object to the net

worth calculation.  Indeed, each of his three sentencing statements was silent

regarding Quisano's ability to pay a fine.  *See* Doc. Nos. 34, 41, 43.

 On March 14, 2006, the court entered a judgment.  Considering the

§ 3553(a) factors and the government's motion for a downward departure,

Quisano was sentenced to 54 months of imprisonment, four years of supervised

release, a fine of $15,000, and a special assessment of $200.00.  Gov. Ex. C.  The

imposed prison sentence was below the sentencing guideline range, and the fine

was within the advisory guideline range of $15,000 to $4,000,000.  *Id.*

 On December 7, 2007, Quisano filed his Petition for Writ of Error

Coram Nobis, attacking the $15,000 fine.  On January 22, 2008, the government

filed a Memorandum in Opposition.

### III.  DISCUSSION

Quisano argues that he is entitled to a writ of error coram nobis

because the PSR improperly calculated his ability to pay a fine, which resulted in a

fine in violation of the Excessive Fines Clause of the Eighth Amendment.  Pet. 5.

Specifically, Quisano argues that the PSR's calculation of his net worth did not

take into account the accumulated depreciation of his vehicles, or that his business

inventory was held as consignment.  When his correct net worth of $23,300 is

taken into consideration, Quisano contends that his fine should be $3,796.  The

government argues that the court should deny Quisano's Petition because Quisano

(1) waived his right to collaterally attack his sentence, and (2) failed to establish

two elements necessary for a writ of error coram nobis.  As explained below, the

court agrees with each of the government's reasons, and finds that Quisano is not

entitled to the relief he seeks.

### A.    Quisano's Waiver of Right to Appeal

Petitioner's waiver of his right to collaterally attack his sentence is

enforceable if (1) the language of the waiver encompasses his right to attack his

sentence on the grounds raised, and (2) the waiver was knowingly and voluntarily

made.  *See United States v. Joyce*, 357 F.3d 921, 922-23 (9th Cir. 2004); *United States v. Rodriguez*, 360 F.3d 949, 959 (9th Cir. 2004); *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).

> In the plea agreement, Quisano expressly waived:
>
> > his right to challenge his sentence or the manner in which it was determined *in any collateral attack*, including, but not limited to, a motion brought under [28 U.S.C. § 2255], except that defendant may make such challenge (1) [on the portions of his sentence greater than that specified in the guideline range, if the court imposes such a sentence], or (2) based on a claim of ineffective assistance of counsel.

Gov. Ex. B, ¶ 13 (emphasis added).  Because "a petition for writ of error coram nobis is a collateral attack on a criminal conviction," *Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994), and Quisano does not base his Petition on either of the exceptions listed in the plea agreement, the court finds that the plea agreement's waiver language encompasses his right to collaterally attack through a petition for writ of error coram nobis.  *See United States v. Chavez-Salais*, 337 F.3d 1170, 1172 (10th Cir. 2003) (stating that the "conventional understanding of "collateral attack" comprises challenges brought under . . . writs of coram nobis").

> The court further finds that Quisano waived his rights knowingly and voluntarily.  The plea agreement clearly recites the waiver.  Gov. Ex. B, ¶ 13.

Further, during the April 12, 2005 plea colloquy, Quisano acknowledged that he understood and had spoken with his attorney about the plea agreement, and that the plea agreement limited his right to challenge his sentence in any collateral attack with the inapplicable exceptions.  Gov. Ex. D, 5, 13-14.  After determining that Quisano's plea was knowing and voluntary, the court accepted Quisano's plea.  *Id.* at 22.  Based on the above, the court DENIES Quisano's Petition because he waived his right to collaterally attack his sentence, including the $15,000 fine.

## B.   Writ of Error Coram Nobis

Even if Quisano had not expressly waived his right to collaterally attack his sentence, Quisano's Petition still fails.

"Coram nobis is an extraordinary writ, used only to review errors of the most fundamental character."  *Matus-Leva v. United States*, 287 F.3d 758, 760 (9th Cir. 2002); *see also United States v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007) ("Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable.").

To qualify for the extraordinary remedy of a writ of error coram nobis, a petitioner must show that:

> (1) a more usual remedy is not available; (2) valid reasons exist
> for not attacking the conviction earlier; (3) adverse
> consequences exist from the conviction sufficient to satisfy the
> case or controversy requirement of Article III; and (4) the error
> is of the most fundamental character.

*Riedl*, 496 F.3d at 1006 (*quoting Hirabayashi v. United States*, 828 F.2d 591, 604

(9th Cir. 1987).  "Because these requirements are conjunctive, failure to meet any

one of them is fatal."  *Matus-Leva*, 287 F.3d at 760 (*citing United States v.

McClelland*, 941 F.2d 999, 1002 (9th Cir. 1991)).

Quisano fails to establish at least two of these four elements.  First,

Quisano fails to provide any valid reason for not challenging his fine earlier.

"[C]ourts have denied relief on this ground where the petitioner has delayed for no

reason whatsoever, where the respondent demonstrates prejudice, or where the

petitioner appears to be abusing the writ" by attempting to "re-litigate claims or

circumvent procedural bars."  *United States v. Kwan*, 407 F.3d 1005, 1013 (9th

Cir. 2005); *see also Riedl*, 496 F.3d at 1006 (finding writ of error coram nobis

could not be issued where claims could have been raised earlier and no sound

reasons for delay exist).

The PSR, completed on June 27, 2005, was provided to Quisano.

Quisano did not object to the net worth calculation in any of his three sentencing

statements.  *See* Doc. Nos. 34, 41, 43.  Quisano's Petition provides absolutely no

8

reason why he delayed raising these alleged errors for over two and a half years after receiving the PSR, and one and a half years after being sentenced.  With no proffered reason whatsoever for the delay, Quisano has failed to carry his burden of proof to offer valid reasons for the delay.[2]

Second, Quisano fails to establish that the PSR's calculation of his net worth "is of the most fundamental character."  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'"  *Austin v. United States*, 509 U.S. 602, 609-10 (1993) (emphasis deleted).  "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish."  *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (citations omitted) (applying the Excessive Fines Clause to a criminal forfeiture).  In determining the constitutionality of a fine, the court "must compare the amount of the [fine] to the gravity of the defendant's offense.  If the amount of the forfeiture

---

[2]  The government also argues that laches applies to bar Quisano's Petition.  Because Petitioner has failed to prove *any* reason for his delay, the court need not address whether laches applies here.

is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." *Id.* at 336-37.

Quisano argues that the $15,000 fine was excessive, and exceeds the applicable fine by $11,204. Quisano rationalizes that $15,000 is 16.29% of his net worth as calculated by the PSR; applying this percentage to his correct net worth of $23,300 results in a fine of $3,796. Pet. 5. Quisano's argument does not persuade the court.

Fines are not determined based on a percentage of net worth; they are determined based on various factors, including the offense conduct and the defendant's ability to pay. *See, e.g.*, United States Sentencing Guideline § 5E1.2. Quisano's fine was not disproportional to the gravity of his offense; indeed, the fine imposed was the minimum suggested by the sentencing guidelines. *See* PSR ¶ 87 (describing that pursuant to U.S.S.G. §§ 5E1.2(c)(1) & 5E1.2(c)(4), the fine range is from $15,000 to $4,000,000). Even accepting Quisano's claim that his net worth was in fact $23,300, a fine of $15,000 was reasonable and appropriate. Accordingly, Quisano has failed to establish any violation of the Excessive Fines Clause.

Further, Quisano has provided no evidence that supports his contention that the PSR used an incorrect valuation of his business or vehicles.

Regarding his business, Quisano argues that the PSR erroneously considered consignment inventory that he did not own as business assets.  Pet. 9.  Quisano does not, however, provide any evidence that establishes that he held his inventory as consignment.  Rather, the only evidence he presents is a note indicating that he recently sold his business for $4,200.  Pet. Ex. 2.  While this amount is substantially less than the $50,000 valuation, this exhibit does not establish that, as of the date of the PSR, Quisano's business was worth less than $50,000, or that the $50,000 calculation was based on consignment inventory.

Quisano also argues that the PSR failed to include accumulated depreciation on his vehicles, which lowers their worth to $12,000.  Pet. 8.  The term "accumulated depreciation" refers to the reduction of the carrying amount of an asset on a balance sheet to reflect loss of value over time.  An asset's fair market value reflects this depreciation -- it is axiomatic that an individual cannot sell a used vehicle for the same price that he purchased it.  The PSR, by determining the fair market value of each of these vehicles, therefore included depreciation in its calculation.  Accordingly, it is unclear whether Quisano is arguing that the PSR (1) incorrectly used the fair market value of the vehicles at the time they were purchased, (2) improperly determined the vehicles' fair market value based on name, brand, model and year of each vehicle without taking into

11

account their actual value, Pet. 9, or (3) should have determined the value of the vehicles at the time Defendant is scheduled to be released from prison.  Pet. 5. Regardless of which theory Quisano proceeds under, however, he has provided no evidence to support any theory of "accumulated depreciation."  The court therefore finds that Quisano has failed to establish that the PSR's calculation of his net worth "is of the most fundamental character."

## IV.  CONCLUSION

For the reasons discussed above, the court DENIES Quisano's Petition for Writ of Error Coram Nobis.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 7, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Quisano v. United States*, CIV. NO.  07-00594 JMS/BMK, Order Denying Quisano's Petition for Writ of Error Coram Nobis